UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ISAIAH SAVADO, <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER KOZORA, et al., <br><br> Defendants. | Case No. 3:23-CV-588-CCB |

## **OPINION AND ORDER**

On August 2, 2023, Plaintiff Isaiah Savado filed a second amended complaint against South Bend Police Officers Christopher Kozora and Jeffery Diggins. (ECF 15). Plaintiff brings claims under Section 1983 for violations of his First and Fourth Amendment rights. On October 31, 2024, Defendants moved for summary judgment. (ECF 40). Based on the applicable law, facts, and arguments, Defendants' motion for summary judgment will be **GRANTED**.

**I.    RELEVANT BACKGROUND**

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis below.

On April 16, 2022, the South Bend Police Department ("SBPD") received a 911 "Unwanted/Trespass" call from a South Bend Chocolate Café employee. (ECF 42 at 1). The employee reported that a group of people were outside the store with a microphone "shouting at white people" and asked that officers remove the group from the property. (*Id.* at 2). South Bend Police Officers Kozora and Diggins responded to the

scene and encountered Plaintiff and three others standing on the sidewalk in front of the doorway to Ben's Pretzels. (*Id.*). Plaintiff and two men were preaching and Plaintiff's wife was filming. (YouTube Video (Exhibit D)). Plaintiff was "protesting, passing out fliers, and speaking to the public." (ECF 15 at 2).

Officers Kozora and Diggins tried to engage Plaintiff but Plaintiff and his companions continued speaking into the microphone. (ECF 42 at 3). Plaintiff and the other members of the group began directing racial comments toward Officer Kozora. (*Id.* at 4). The Officers decided to leave and began walking away. (*Id.*). As they were leaving the scene, the manager of the bar next to Ben's Pretzels stopped Officer Kozora and told him that "Savado and his companions had been causing a disturbance for some time, had called him 'gay,' and had been picking fights with everyone on the street." (*Id.*). Officer Kozora walked back to Plaintiff, told him of the manager's complaints, and advised him "that he had the right to peacefully protest and read the bible, but did not have a right to harass people or call them names." (*Id.* at 6). He also told Plaintiff that he would need to leave if he was going to continue to harass people. (*Id.*); (Kozora Body Camera (Exhibit A-1) at 5:26; 10:28).

Officers Kozora and Diggins spoke with the bar manager again, who told them that he wanted Plaintiff and his group to be removed and that he was afraid there would be problems if the group stayed. (ECF 42 at 6). Officers Kozora and Diggins walked by Plaintiff and the others to gather more information from the employees at the Chocolate Café when Plaintiff said loudly into the microphone, while looking at the Officers, "Now you want to lie to the police, but then you want to talk to us. Now you

2

want to talk to us." (YouTube Video (Exhibit D) at 30:28). Officer Kozora appeared to think Plaintiff was talking to him and he turned and said "Hey, hey, don't, don't" (*Id.* at 30:23).

The Officers then approached Plaintiff and the group again to try to explain that they are getting close to the criteria for disorderly conduct, while Plaintiff repeated, "Don't listen to him, don't listen to him." (*Id.* at 30:26). Officer Kozora said, "One of you is going to listen." (*Id.* at 30:29). He tried to talk to another member of the group, but Plaintiff continued to talk to Officer Kozora, telling him that Officer Kozora needed to talk to the other man, presumably the bar manager, and not them. (*Id.* at 30:40). Plaintiff told the member of the group that Officer Kozora was trying to talk to, to continue reading the bible and to read a specific bible quote. (*Id.* at 31:04). Officers begin walking away again when Plaintiff said loudly into the microphone "Did you see us talking to anybody, did you see us talking to anybody?" (*Id.* at 31:16). Officer Kozora put his finger up and told Plaintiff to "Stop." (*Id.* at 31:18). Plaintiff said, "You didn't see nothing… We're preaching the bible, if he don't want to hear it, he can move on." (*Id.* at 31:20). Officer Kozora tried to talk to Plaintiff again but Plaintiff ignored him and kept talking, to which Officer Kozora said "Sir!" (*Id.* at 31:26). Plaintiff kept talking into the microphone and then Officer Kozora handcuffed Plaintiff and put him in his squad car at approximately 2:24 P.M. (ECF 42 at 9).

Plaintiff remained in the squad car while Officer Kozora interviewed witnesses at the South Bend Chocolate Café. (*Id.* at 10, 11). Officers released Plaintiff from the squad car at approximately 2:39 P.M. (*Id.* at 10). The Officers told Plaintiff multiple times that

3

he was just being detained and he was not under arrest. (*Id.* at 11); (ECF 42-1 at 5). When officers left, Plaintiff and his companions returned to the same spot in front of Ben's Pretzels and continued to speak into the microphone. (ECF 41-1 at 6). Plaintiff was not "cited, arrested, or charged with a crime or misdemeanor as a result of this incident or his conduct on April 16th." (*Id.*).

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

4

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.  ANALYSIS

Plaintiff brings claims under 42 U.S.C. § 1983 against Officers Kozora and Diggins for violating his Fourth Amendment right to be free from unreasonable searches and seizures and his First Amendment right to freedom of speech.

####   A.  Plaintiff's Request to Strike Defendants' Footnotes

The Court must first address Plaintiff's request in his response to Defendants' motion for summary judgment that the "Court strike all footnotes contained in Defendants' brief, or to consider those points made in the footnote waived." (ECF 56 at 3-4).

N.D. Ind. L. R. 7-1(e) states that absent an exception, "[s]upporting and response briefs (excluding tables of contents, tables of authorities, and appendices) ordinarily must not exceed 25 pages. Reply briefs must not exceed 15 pages." Defendants' brief in

support of their motion for summary judgment is 25 pages and contains 22 footnotes. The Court reviewed all briefing, including the footnotes, and determined that the footnotes are not an attempt to evade the page limits as stated in the local rules. The information in the footnotes is largely tangential and seems to be, as explained by Defendants, "designed to assist the reader with a logical, efficient, and progressive reading of Defendant's Brief, without distracting from the arguments and undisputed facts themselves." (ECF 59 at 2). Plaintiff's request to strike the footnotes is **DENIED**.

Having resolved Plaintiff's request, the Court will now analyze the merits of Defendants' motion for summary judgment.

### B. Fourth Amendment Claim

Plaintiff argues that Officers Kozora and Diggins violated his Fourth Amendment rights when they seized and arrested him. He argues the Officers' actions "constituted an unlawful seizure and arrest," and were intentional, willful, and wanton. (ECF 15 at 2). Defendants argue that Plaintiff was not arrested, but detained, and the Officers' actions "constituted a reasonable and permissible investigatory stop under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968)." (ECF 41 at 3-4). They also argue that the Officers had "a particularized and objective reasonable suspicion that Savado had been engaged in and was continuing to engage in the crime of disorderly conduct." (*Id.* at 9).

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment allows for "brief investigative stops," sometimes called "*Terry*" stops, when an officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v.*

6

*Cortez*, 449 U.S. 411, 417–18 (1981). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White,* 496 U.S. 325, 330 (1990)). The reasonable suspicion required is less than what is necessary for probable cause. *Id.* Reasonable suspicion also "does not require the officer to rule out all innocent explanations of what he sees," since the need to "resolve ambiguous factual situations" is a core reason for investigative stops in the first place. *United States v. Miranda-Sotolongo*, 827 F.3d 663, 669 (7th Cir. 2016).

Plaintiff contends that "[t]here were no facts to support a reasonable suspicion that Savado had committed a crime." (ECF 56 at 10). He argues that he did not "engage in loud, tumultuous or harassing behavior," and says that he complied when Defendants told him to stop. (*Id.* at 12). Plaintiff's arguments are not supported by the record. The record does show, however, that the Officers justifiably held a reasonable suspicion that Plaintiff was engaging in disorderly conduct.

Under Indiana law, a person who recklessly, knowingly, or intentionally makes unreasonable noise and continues to do so after being asked to stop commits disorderly conduct, which is a Class B misdemeanor. Ind. Code § 35–45–1–3(a)(2) (2022). In accordance with the disorderly conduct statute, noise is "unreasonable" if it is too loud for the circumstances. *See Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind.1996). "[T]he prohibition against unreasonable noise in Indiana's disorderly conduct statute . . . is aimed at the intrusiveness and loudness of expression, not whether the content of the language is obscene or provocative." *Hooks v. State,* 660 N.E.2d 1076, 1077

(Ind.Ct.App.1996). "Indiana courts have repeatedly held that loud noises that interfere with a police investigation are grounds for a charge of disorderly conduct." *Lenig v. Sponaugle,* No. 2–11–CV–186–TLS, 2013 WL 2420864, *5 (N.D.Ind.2013) (citing *J.D. v. State*, 859 N.E.2d 341 (Ind.2007); *Anderson v. State*, 881 N.E.2d 86, 88 (Ind.Ct.App.2008); *Blackman v. State*, 868 N.E.2d 579 (Ind.Ct.App.2007)).

Both Officers believed, when they first arrived on the scene, that Plaintiff was being "disruptive" and "violating the ordinance regarding loudspeakers and unreasonable noise within City limits," but they chose not to issue a citation. (42-2 at 2); (42-1 at 2). Officer Diggins described that Plaintiff was loud enough to be heard at least half a block away. (*Id.*). When they continued investigating, the Officers witnessed several people in the area "changing course" to avoid walking in front of the camera or by the men. (42-2 at 2); (42-1 at 2). Officers were then told by the bar manager that the men said harassing and demeaning things to him and others on the street. (42-1 at 3). Officer Kozora tried on several occasions to talk to Plaintiff, who repeatedly talked over him into the microphone and encouraged the other members of his group to not listen to the Officer. (YouTube Video (Exhibit D) at 30:26). Officer Kozora told Plaintiff to stop but, contrary to Plaintiff's allegations, he did not comply,. (*Id.* at 31:16); (ECF 56 at 12).

Plaintiff was thus interfering with Officer Kozora's investigation through his repeated loud talking into the microphone and refusal to stop when asked by Officer Kozora. As mentioned above, this behavior is grounds for a "charge of disorderly conduct." *Lenig v. Sponaugle,* No. 2–11–CV–186–TLS, 2013 WL 2420864, *5 (N.D.Ind.2013). A reasonable jury could only conclude that the Officers had a

8

reasonable suspicion, based on their own observations, training, and experience, that Plaintiff was engaging in disorderly conduct. This reasonable suspicion formed the particularized and objective basis for the brief *Terry* stop. *Cortez*, 449 U.S. at 417–18.

An initially constitutional *Terry* stop can become unconstitutional when an officer "prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). A *Terry* stop cannot last any "longer than is necessary to effectuate" the purpose of the stop. *Id.* at 354. Officers can use handcuffs and temporarily place suspects in police vehicles during a *Terry* stop without necessarily turning the stop into an arrest under the Fourth Amendment. *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994); *United States v. Stewart*, 388 F.3d 1079, 1084 (7th Cir. 2004).

With respect to the degree of intrusion and its relation to the law enforcement matter at hand, the Officers' decision to handcuff and briefly detain Plaintiff was reasonable. *United States v. Tilmon,* 19 F.3d 1221, 1225 (7th Cir. 1994). It is true that officers should "use the least intrusive means reasonably available to verify or dispel their suspicions in a short period of time." *Id.* Handcuffing Plaintiff and placing him in a squad car for less than fifteen minutes while Officer Kozora continued investigating the situation did not constitute an unreasonable intrusion or an unconstitutional detention. *See United States v. Bullock,* 632 F.3d 1004, 1011 (7th Cir. 2011) (finding officers acted reasonably in handcuffing and detaining the defendant for thirty to forty minutes while they investigated); *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994) (holding a twenty minute detention reasonable considering the circumstances of the

9

investigation); *United States v. Davies,* 768 F.2d 893, 901–02 (7th Cir.) (holding that the forty-five minute detention was justified to satisfy the investigative purposes of the stop). Plaintiff's fifteen-minute detention did not last any longer than what was necessary to effectuate the purpose of the stop, which was to investigate the harassment and disorderly conduct reports. *Rodriguez*, 575 U.S. at 355. Thus, a reasonable jury could only find that the *Terry* stop was constitutional.

Plaintiff also argues that there is a genuine dispute of material fact as to whether Plaintiff's detention was actually an arrest. (ECF 56 at 14). Defendants correctly argue that "no jury could reasonably determine that Defendants' use of force transformed the stop into an arrest." (ECF 59 at 10).

"Subtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a *de facto* arrest." *Tilmon*, 19 F.3d at 1224. Probable cause might be required "when police restraint is so intrusive that, while not technically an "arrest," it may be "tantamount" to an arrest." *Id.* In other words, when "an officer's use of force . . . becomes so disproportionate to the purpose of such a stop in light of the surrounding circumstances" the *Terry* stop can become a de facto arrest "which must then be justified by probable cause." *Rabin v. Flynn*, 725 F.3d 628, 632–33 (7th Cir. 2013).

The circumstances surrounding Plaintiff's detention did not turn the detention into a de facto arrest. The mere use of handcuffs or placing Plaintiff in a police car are not enough to transform the *Terry* stop into an arrest. *See Tilmon*, 19 F.3d at 1228 (stating that handcuffing during a *Terry* stop was "once highly problematic" and has now

10

become "quite acceptable"). The Officers' use of force in handcuffing Plaintiff during the investigative stop was not so disproportionate to the purpose of the stop as to become a formal arrest. *Rabin*, 725 F.3d at 632–33. Officers tried to walk away from Plaintiff and his group several times to speak with the South Bend Chocolate Café employees, but Plaintiff continued to engage the Officers using the microphone, arguing with them about who they should talk to and when. Plaintiff ignored a direct order to stop talking and by continuing to loudly speak into the microphone, made it impossible for Officer Kozora to talk to the other members of his group. Plaintiff even admits that Officer Kozora asked him not to talk over him but he continued to "teach" anyway. (ECF 42-3 at 43-44). The Officers conduct, given their suspicions and the surrounding circumstances, was reasonable and the detention was not a de facto arrest, and no reasonable jury could find otherwise. *Tilmon*, 19 F.3d at 1224.

     Plaintiff does not present evidence that supports a conclusion that there is a genuine issue of material fact regarding whether the Officers' actions were reasonable or whether he was arrested, not detained. Summary judgment is the "put up or shut up moment in a lawsuit" and Plaintiff needed to present what evidence he had to convince the Court that there is a genuine dispute of material fact as to his unreasonable seizure and false arrest claims. *Hammel*, 407 F.3d at 859. He did not do so and therefore, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's Fourth Amendment claim.

### C. First Amendment Claim

Plaintiff also brings a claim under Section 1983 against Officers Kozora and Diggins for violating his First Amendment freedom of speech. He appears to be bringing a First Amendment retaliatory arrest claim because he argues that his preaching was protected by the First Amendment and Defendants' conduct "would chill an ordinary person from future free speech." (ECF 15 at 3). Defendants argue that "Plaintiff was not engaging in *protected* speech, that Defendants did not retaliate against him for exercising his First Amendment rights, and that Savado's ability to preach, protest, or otherwise engage in protected speech was not curtailed by Defendants in any way." (ECF 41 at 12) (emphasis in original).

The First Amendment guarantees the freedom of speech. *See* U.S. Const. amend. I. To make out a First Amendment case on summary judgment, a plaintiff must show: "(1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). Once a plaintiff shows that a violation of his First Amendment rights was a motivating factor of the harm he is complaining of, the burden then shifts to the defendant to show he would have taken the same action in the absence of the protected speech. *Valentino v. Vill. of S. Chicago Heights,* 575 F.3d 664, 670 (7th Cir. 2009). If a defendant can show that the "same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and

12

that the real reason was retaliatory animus." *Thayer*, 705 F.3d at 251–52 (quoting *Greene v. Doruff,* 660 F.3d 975, 977 (7th Cir.2011)). In essence, the plaintiff "must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.* (citing *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir.2011)).

    A plaintiff must show all the elements in the three-step analysis. *Brown v. City of Fort Wayne,* 752 F. Supp. 2d 925, 951 (N.D. Ind. 2010). The Court need not address the first two elements because Plaintiff's First Amendment claim fails on the last prong as he cannot show that the First Amendment activity was at least a motivating factor in Officers Kozora and Diggins' decision to briefly detain him. Plaintiff argues that given Officer "Kozora's visible frustrations, interruptions, and dismissive behavior, there is a genuine issue of material fact as to whether Kozora's reaction to Savado's protected speech was a motivating factor in his decision to take further action." (ECF 56 at 19). Drawing all reasonable inferences in Plaintiff's favor at this stage, the Court will assume for argument's sake that Plaintiff has shown that a violation of his First Amendment rights was at least a partial motivating factor in the harm that he is complaining about. *Heft v. Moore,* 351 F.3d at 282. The burden then shifts to Defendants to show that Officer Kozora would have taken the same action even without the allegedly protected speech. *Valentino,* 575 F.3d at 670.

    Defendants have shown that the actions taken by the Officers were not motivated by the content of Plaintiff's speech, but Plaintiff's "refusal to heed Defendants' instructions, and attempts to interfere with Defendants' investigation into the noise and harassment complaints against him were the but-for cause of his

13

temporary detention." (ECF 41 at 17). They also argue that even if Officer Kozora was as initially frustrated or offended by Plaintiff's speech as Plaintiff alleges, the only further action he took was to walk away. (ECF 59 at 11). The record supports Defendants' argument as well. Officer Kozora told Plaintiff several times that he had a right to peacefully protest and read the bible but he could not harass people. (Kozora Body Camera (Exhibit A-1) at 5:26; 10:28, 16:09); (ECF 42-3 at 20-21). As mentioned above, Officers tried to walk away at least twice to speak with the South Bend Chocolate Café employees, but Plaintiff continued to argue with the Officers through the microphone while pointing at them. After Officers walked back over to Plaintiff, Plaintiff continued to argue loudly with Officer Kozora, ignoring his direct order to stop. Officer Kozora then decided to handcuff and detain Plaintiff. His decision to detain Plaintiff occurred immediately after Plaintiff refused to listen to his instruction and while Plaintiff was actively interfering with the Officers' investigation. Defendants have thus shown that the Officers would have made the same decisions in the absence of the allegedly protected speech, so the burden now shifts back to Plaintiff to produce evidence that would allow a rational finder of fact to "infer that the defendant's proffered reason is a lie." *Thayer*, 705 F.3d at 251–52.

  Plaintiff did not produce evidence to allow a jury to infer that Defendants' proffered explanation is a lie. The record shows that Plaintiff's refusal to stop talking over Officer Kozora and his interference with the investigation, not the content of his speech, was the "but for" cause of his detention. *Thayer*, 705 F.3d at 252. Plaintiff did not present evidence to conclude otherwise. Plaintiff merely rests on his argument that

14

Officer "Kozora's visible frustration, interruptions, and dismissive behavior" is enough to show a genuine issue of material fact as to whether his reaction to Plaintiff's preaching was a motivating factor in Plaintiff's detention. (ECF 56 at 19). To defeat a motion for summary judgment, Plaintiff "cannot rest on the mere allegations or denials contained in his pleadings," rather, he must present sufficient evidence to show the existence of each element of his case. *Robin*, 200 F.3d at 1088. Plaintiff did not show that there is a reasonable dispute whether Officer Kozora would have detained Plaintiff despite any potential animus toward his protected First Amendment activity. Therefore, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's First Amendment claim as well.

IV.   **CONCLUSION**

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED**. (ECF 40).

SO ORDERED on September 2, 2025.

                                                    /s/*Cristal C. Brisco*
                                                    CRISTAL C. BRISCO, JUDGE
                                                    UNITED STATES DISTRICT COURT